UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATALIE ANDERSON, <br><br> Plaintiff, <br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, <br><br> Defendant. | CASE NO. C18-5026 BHS <br><br> ORDER REVERSING AND REMANDING DENIAL OF BENEFITS |

**I.   BASIC DATA**

Type of Benefits Sought:

    ( ) Disability Insurance

    ( X ) Supplemental Security Income

Plaintiff's:

    Sex:  Female

    Age:  47 at the time of alleged disability onset

Principal Disabilities Alleged by Plaintiff:  Back spasms; anxiety; severe knee pain; fibroid pain/issues.  AR at 75.

Disability Allegedly Began:  May 7, 2013

Principal Previous Work Experience:  Cleaner, housekeeping; telephone solicitor; fast food worker; and cashier.

Education Level Achieved by Plaintiff:  High school diploma with some college

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before ALJ:

    Date of Hearing: August 10, 2016

    Date of Decision: November 28, 2016

    Appears in Record at: AR 17-45

    Summary of Decision:

    The claimant has not engaged in substantial gainful activity since August 15, 2014, the application date (20 C.F.R. § 416.971, et seq.);

    The claimant has the following severe medically determinable impairments: depression; personality disorder; somatoform disorder; morbid obesity; mild degenerative joint disease of the knees; and mild degenerative disc disease of the lumbar spine (20 C.F.R. § 416.920(c));

    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926);

    After careful consideration of the entire record, the Administrative Law Judge ("ALJ") found that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), except she can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She cannot work with the general public. She can work in proximity to coworkers, but does better with solitary work tasks, and should not perform work involving collaborative decision-making with coworkers or teamwork situations. She can make occasional adaptation to changes in work settings.

    The claimant is capable of performing past relevant work as a cleaner, housekeeping. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 416.965);

    The claimant has not been under a disability, as defined in the Social Security Act, since August 14, 2014, the date the application was filed (20 C.F.R. § 416.920(f)).

Before Appeals Council:

    Date of Decision: December 6, 2017

    Appears in Record at: AR 1-6

    Summary of Decision: Denied review.

### III.    PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by ( X ) Plaintiff   ( X ) Commissioner

### IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

# V. EVALUATING DISABILITY

The claimant, Natalie Anderson ("Anderson"), bears the burden of proving she is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof during steps one through four. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. *Id.*

# VI. ISSUES ON APPEAL

Whether the ALJ properly evaluated the opinion of Mary Lemberg, M.D.;

Whether the ALJ properly evaluated the opinion of John Robinson, Ph.D.

# VII. DISCUSSION

**A.  The ALJ Did Not Err in Evaluating Mary Lemberg, M.D.'s Opinions**

Dr. Lemberg examined Anderson on November 24, 2014.  AR at 335.  Dr. Lemberg noted reviewing a medical record from April 2014 indicating a history of sleeping disorder and grief over the murder of Anderson's son in 2006.  *Id.*  She also noted reviewing a function report, but did not identify the date of that report.  *Id.*

Dr. Lemberg performed a mental status exam and intellectual functioning tests.  *See id.* at 338-39.  Dr. Lemberg noted that Anderson "sobbed throughout most of the interview with variable intensity, and went from pacing to sitting to lying down on the floor.  *Id.* at 338.  Dr. Lemberg noted that Anderson failed most of the intellectual functioning tests.  *See id.* at 338-39.  For example, Anderson could not recall any of three objects in five minutes; stated that she could not spell "world" backwards; responded "I have no idea" to questions such as how apples and oranges are similar; and needed several basic questions repeated to her.  *Id.*

Dr. Lemberg diagnosed Anderson with major depressive disorder, recurrent and severe, without psychotic features; somatic symptom disorder with predominant pain; and "other specified personality disorder, mixed personality features."  *Id.* at 340.  Dr. Lemberg further noted a rule-out diagnosis of posttraumatic stress disorder.  *Id.*

Based on the examination and diagnoses, Dr. Lemberg opined that Anderson "does not have the ability to sustain simple and repetitive tasks, and would be incapable of completing detailed and complex tasks."  *Id.* at 340.  Anderson "cannot appropriately adapt to new environments," and "has never been able to maintain appropriate

interpersonal relationships in work or personal environments." *Id.* Dr. Lemberg concluded that Anderson "cannot perform work activities on a consistent basis due to her psychiatric conditions." *Id.*

The ALJ gave little weight to Dr. Lemberg's opinions because she found that they were "grossly inconsistent with the overall medical evidence" in the record. *Id.* at 38-39. In particular, the ALJ determined that Dr. Lemberg's observations (1) were inconsistent with Anderson's daily activities; (2) were inconsistent with the medical record; and (3) relied too heavily on Anderson's subjective complaints, which were not reliable. *Id.*

Where the ALJ rejects the opinion of an examining doctor, even if it is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting the opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). The court may also draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

The ALJ adequately explained her decision to reject Dr. Lemberg's opinion here. First, the record supports her determination that Dr. Lemberg's opinion was inconsistent with Anderson's daily activities. Anderson reported to Dr. Lemberg that she lies in bed all day and does not engage in any household responsibilities. *See* AR at 38, 339. Yet evidence in the record indicated that Anderson "was taking care of her grandchildren and

performing daily household responsibilities during this time." *Id.* at 38; *see id.* at 234-35, 635, 861.

Second, the record supports the ALJ's conclusion that Dr. Lemberg's observations were inconsistent with the overall medical evidence. Dr. Lemberg reported far more intense cognitive deficits than Anderson showed during regular visits with her counselors and other health care providers. *See* AR at 38, 388, 447-48, 450-51, 453-54, 457. Less than a week before her appointment with Dr. Lemberg, Anderson denied suffering from depression, anxiety, or suicidal ideations, yet Dr. Lemberg observed that Anderson had "severe" depression. *See id.* at 317-18, 340.

The ALJ further noted that Anderson "received spotty mental health treatment, and her mental health symptoms actually improved and stabilized when she was compliant with taking her medications." *Id.* This was a rational interpretation of the evidence, which the Court will not disturb. *See Thomas*, 278 F.3d at 954. Anderson denied having depression or anxiety, or was reported as stable on her medications multiple times between May 1, 2014 and October 22, 2015. *See* AR at 29, 34, 317-18, 421, 431, 452-53, 724.

The ALJ's rejection of Dr. Lemberg's opinion because of its reliance on Anderson's self-report stands on shakier ground. An ALJ may justifiably discount an examining doctor's opinions if they "are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). But an ALJ must tread carefully in the mental

health context. Psychiatric evaluations "will always depend in part on the patient's self-report" because "unlike a broken arm, a mind cannot be x-rayed." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Furthermore, clinical interviews and mental status exams, "are objective measures and cannot be discounted as 'self-report.'" *Id.*

The Court need not decide whether the ALJ erred in rejecting Dr. Lemberg's opinions as too heavily based on Anderson's self-report, though, because any error in including this reason was harmless. *See Baker v. Berryhill*, 720 F. App'x 352, 356 (9th Cir. 2017) (finding harmless error where the ALJ stated erroneous reasons for discounting examining psychologist's opinion because the ALJ also included specific and legitimate reasons); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ therefore did not harmfully err in giving little weight to Dr. Lemberg's opinions.

**B.     The ALJ Erred in Evaluating John Robinson, Ph.D.'s Opinions**

Dr. Robinson is a state-agency consultant who submitted an opinion to Disability Determination Services on February 9, 2015. AR at 101-03. Dr. Robinson opined, among other things, that Anderson was moderately limited in her ability to complete a normal workday and week without interruptions from psychologically-based symptoms. *Id.* at 102. He explained that "[d]espite waxing and waning symptoms, [Anderson] would be capable of sustaining [concentration, persistence, and pace] for [simple, routine

tasks]. [H]er [mental health symptoms] will also cause intermittent issues w[ith] attendance." *Id.*

The ALJ noted that Dr. Robinson's opinion was "generally consistent with the medical evidence of record" discussed earlier in the decision. *Id.* at 39. Comparing Dr. Robinson's opinion to that of state-agency consultant Michael Regets, Ph.D., the ALJ gave Dr. Robinson's opinion greater weight because he had reviewed more records. *Id.*

The ALJ erred in her treatment of Dr. Robinson's attendance limitation opinion. Despite giving weight to Dr. Robinson's opinion, the ALJ failed to discuss his attendance limitation. This failure to discuss Dr. Robinson's attendance limitation or provide reasons for rejecting it was error. *See Clarke v. Berryhill*, 694 F. App'x 577, 578 (9th Cir. 2017) (holding that the ALJ erred by failing to discuss a non-examining psychologist's opinion because the court could not determine whether the ALJ considered that opinion, as required). Furthermore, an ALJ must account for all of the claimant's limitations when crafting the RFC. *See Valentine*, 574 F.3d at 690. Here, the ALJ simply ignored part of Dr. Robinson's opinion, and thus erred.

The root of the problem is that Dr. Robinson's attendance limitation opinion is ambiguous, and the ALJ failed to resolve that ambiguity. "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (citing *Thomas v. Schweiker*, 665 F.2d 936, 941 (9th Cir. 1982)). The duty to develop the record beyond the medical records themselves is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of

the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

Here, Dr. Robinson did not explain what Anderson's "intermittent" attendance issues are. *See* AR at 102. The vocational expert testified that employers would not tolerate an employee who misses more than one day of work per month. AR at 72. Comparing Dr. Robinson's opinion to the vocational expert's testimony, neither the ALJ nor the Court has any basis on which to determine whether Anderson's attendance issues would render her unemployable. As a result, the ALJ's determination that Anderson could perform her past work, and was therefore not disabled, was not supported by substantial evidence in the record.

The ALJ's failure to resolve this issue goes to the heart of the disability determination, and must be considered harmful. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an error is not harmless unless it is "inconsequential to the ultimate nondisability determination"). The Court will therefore remand this matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (holding that remand for further proceedings is the appropriate remedy where additional proceedings can remedy defects in the original administrative proceedings).

On remand, the ALJ must reevaluate Dr. Robinson's opinion, and reassess the RFC, as well as the conclusions at steps four and five of the disability determination process.

the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

Here, Dr. Robinson did not explain what Anderson's "intermittent" attendance issues are. *See* AR at 102. The vocational expert testified that employers would not tolerate an employee who misses more than one day of work per month. AR at 72. Comparing Dr. Robinson's opinion to the vocational expert's testimony, neither the ALJ nor the Court has any basis on which to determine whether Anderson's attendance issues would render her unemployable. As a result, the ALJ's determination that Anderson could perform her past work, and was therefore not disabled, was not supported by substantial evidence in the record.

The ALJ's failure to resolve this issue goes to the heart of the disability determination, and must be considered harmful. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an error is not harmless unless it is "inconsequential to the ultimate nondisability determination"). The Court will therefore remand this matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (holding that remand for further proceedings is the appropriate remedy where additional proceedings can remedy defects in the original administrative proceedings).

On remand, the ALJ must reevaluate Dr. Robinson's opinion, and reassess the RFC, as well as the conclusions at steps four and five of the disability determination process.

# VIII. ORDER

Therefore, it is hereby **ORDERED** that the Commissioner's final decision denying supplemental security income benefits is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 14th day of June, 2018.

_____
BENJAMIN H. SETTLE
United States District Judge